IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD LIDDY, SR., | ) | CASE NO. 1:08 CV 2122 |
| | ) | |
| Petitioner, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| RICH GANSHEIMER, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

## Introduction

Before me by referral[1] is the *pro se* petition of Richard Liddy, Sr. for a writ of habeas corpus under 28 U.S.C. § 2254.[2]  Liddy is now incarcerated by the State of Ohio at the Lake Erie Correctional Institution in Conneaut, Ohio, where he is serving an eight-year sentence imposed in 2006 by the Lake County Court of Common Pleas.[3]  The sentence is the result of Liddy's conviction at a jury trial in that court of one count of illegal manufacture of drugs and one count of illegal assembly or possession of chemicals for the manufacture of drugs.[4]

In this petition, Liddy raises four grounds for relief, essentially contending that: (1) the trial court failed to preserve the trial record for appeal; (2) the trial judge did not take curative steps when he knew of problems with the record; (3) the trial court denied him the

---

[1] This matter was referred to me by non-document order of November 3, 2008.

[2] ECF # 1.

[3] *Id.* at 2.  The sentence also includes a period of five years of post-release control.

[4] *Id.*

right to self-representation during a hearing to recreate portions of the record; and (4) the trial court exhibited partiality and vindictiveness.[5]

The State, in response, argues first that Liddy's petition should be dismissed because the grounds for relief are all non-cognizable in this court.[6]  Alternatively, the State maintains that all the grounds for relief should be dismissed as procedurally defaulted[7] or denied as without merit.[8]  Liddy, in his traverse, appears to accept that his grounds for relief are procedurally defaulted but asserts that such default should be overlooked because he is "an innocent man" who is "a victim of gross fundamental injustice" that undermined his entire trial.[9]  Additional motions arising under this petition were addressed and denied in a prior order.[10]

For the reasons that follow, I recommend dismissing Grounds Two, Three, and Four as procedurally defaulted, and denying Ground One on the merits subject to a standard of modified AEDPA deference because the state court decision denying the claim was not an unreasonable application of clearly established federal law.

---

[5] *Id*. at 5-6.

[6] ECF # 8 at 7-12.

[7] *Id*. at 12-20.

[8] *Id*. at 20-28.

[9] ECF # 12 at 1.

[10] ECF # 15.

## Facts

### A.    Underlying offense and trial

As recounted by the Ohio appeals court,[11] Liddy was involved with others in operating a so-called meth lab in Lake County, Ohio.[12]  After an earlier indictment against Liddy on drug charges had been dismissed,[13] Liddy was indicted a second time on one count of illegal manufacture of drugs and one count of illegal assembly or possession of chemicals for the manufacture of drugs.[14]  Following a jury trial, Liddy was found guilty on both counts[15] and subsequently sentenced to eight years in prison.[16]

### B.    Direct appeal – the transcript issue

Liddy, through appointed counsel,[17] filed a notice of appeal from his conviction and sentence.[18]  Prior to filing any assignments of error, however, Liddy moved the appeals court

---

[11] Facts found by the state appeals court on its review of the record are presumed correct by the federal habeas court.  28 U.S.C. § 2254(e)(1); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

[12] ECF # 8, Attachment 2 (state court record) at 175-76.

[13] *See*, ECF # 12 (traverse) at 5, referencing Case No. 05-CR-795.

[14] ECF # 8, Attachment 2 at 1-2.

[15] *Id*., at 3.

[16] *Id*., at 4-6.

[17] *Id.*, at 7.

[18] *Id*., at 8.

to "waive ineffective court appointed counsel" and represent himself on appeal.[19]  That

motion was granted.[20]

Accordingly, now representing himself, and again prior to filing any assignments of

error concerning the trial,[21] Liddy moved the court of appeals to "correct or modify" the

record of his trial,[22] asserting that:

    (1)    defects in the courtroom's audio system had led to the production of an
            incomplete transcript containing 425 gaps or omissions; and

    (2)    he should be permitted to see, as part of the trial record for appeal, the
            jury pool list, the verdict forms, all reports by law enforcement, all
            forensic examination results, and transcripts of the proffers and/or
            interviews of witnesses at his trial.[23]

Liddy also moved to include the record created in the case on the first, dismissed

indictment in the record before the court on his appeal from the conviction on the so-called

second indictment.[24]  The state did not respond.[25]

In response, the appeals court found first that it did not have the authority under Ohio

law to add the record of another case to the appellate record before it concerning the case in

_____

    [19] *Id*., at 9-15.

    [20] *Id*., at 17-18.  In connection with Liddy's motion to represent himself, apparently
his appointed counsel also moved to withdraw.  *See*, *id.*, at 17.

    [21] *Id*., at 17.

    [22] *Id*., at 19.

    [23] *Id*., at 20-25.

    [24] *Id*.

    [25] *See*, *id*., at 26.

question.[26]  Likewise, it also found that it could not add additional material to the trial record, such as the police reports, if a request to supplement the record in this regard had not already been made at trial by the defendant.[27]

The appeals court found, however, under Ohio Appellate Rule 9(E), that the proper method for resolving any disputes as to the authenticity of the trial record was to remand the case to the trial court for a resolution.[28]  Given Liddy's assertion of significant omissions in the trial transcript, the appeals court granted Liddy's motion in this respect, remanding Liddy's case to the trial court to conduct a hearing to determine whether "any of the omissions in the trial transcript can be corrected to indicate the inaudible statements."[29]  The court further ordered that this hearing be attended by both counsel for Liddy and the state, and that the trial judge retain the ultimate authority to decide what corrections, if any, should be made.[30]

## C.  The transcript hearing

Based on the appellate court's order, and upon the prosecutor's motion,[31] the trial court scheduled a hearing to listen to the audio recording of the trial for the purpose of

---

[26] *Id.*, at 26-27.

[27] *Id.*

[28] *Id.*, at 28.

[29] *Id.*, at 29.

[30] *Id.*

[31] *Id.*, at 30-31.

correcting any inaudible portions of the original trial transcript.[32]  Liddy, however, filed in opposition to such a hearing,[33] claiming that the transcript could not be corrected and that he should, therefore, receive a new trial.[34]  The trial court denied Liddy's motion.[35]

Under the court order, Liddy attended the hearing.[36]  From the start, however, Liddy engaged in multiple confrontational and argumentative exchanges with the trial judge,[37] eventually resulting in the court removing him from the hearing.[38]

In Liddy's absence, the trial judge noted that he had listened to the recording, as well as both counsel, and that counsel had prepared a 14-page joint stipulation indicating agreement of where the record could be corrected.[39]  Specifically, as the trial judge noted, where there had been approximately 400 words or phrases in the original transcript that were omitted as unclear,[40] only a few words at 30 places in the transcript remained unintelligible

---

[32] *Id*., at 33.

[33] *Id.*, at 34-36.

[34] *Id.*

[35] *Id*., at 37.

[36] ECF # 8, Attachment 3 (hearing transcript) at 266.  The hearing numbers are part of the continuous Bates numbering of the entire state record.  The hearing transcript itself is attached to the end of the record and, as noted, is in a separate ECF attachment from the other portions of the record.

[37] *Id.*, at 266-78.

[38] *Id*., at 279-80.

[39] *Id*., at 280.  The joint stipulation itself is at ECF # 8, Attachment 2 at 40-53.

[40] *Id*., at 283.

after review.[41] As a result, the joint stipulated amendment to the trial record was accepted by

the court and the corrected record was filed on appeal.[42]

## D.    Direct appeal

Liddy, *pro se*, then filed a brief in the direct appeal[43] raising two assignments of error:

1.    Defendant-Appellant's Constitutional right to due process was violated
where the trial court failed to preserve the record of his criminal
proceeding in violation of the 5th and 14th amendments of the United
States Constitution and Rule 22 of the Ohio Rules of Criminal
Procedure.[44]

2.    The trial court abused its discretion to the prejudice of appellant when
it failed to take curative steps to preserve the trial record for appellate
review, in violation of the Ohio and U.S. Constitutions.[45]

The State responded by filing a brief in opposition,[46] noting initially that defendants

are not entitled to a perfect transcript.[47]   Rather, the issue when addressing a claim of

insufficiency in the transcript is whether any such deficiency prejudiced Liddy – which is his

burden to show, but here did not – and not simply whether a defect was present.[48]  Thus, the

---

[41] ECF # 8, Attachment 2 at 55.  More precisely, in the filing to the appeals court, the
trial judge calculated, based on a total transcript of 126,400 words, that the supplemental,
corrected transcript was 99.93% accurate and complete.  *Id*., n.2.

[42] *Id*., at 54-55.

[43] *Id*., at 56-72.

[44] *Id*., at 63.

[45] *Id*., at 70.

[46] *Id*., at 93-101.

[47] *Id*., at 97.

[48] *Id*., at 97-98.

State argued, there was no abuse of discretion in this case where the  trial court, after having been notified of gaps or omissions, carefully reviewed the tape of the trial proceedings in connection with both counsel to produce a stipulated corrected transcript where "nearly all the gaps are filled" that is "now sufficient for appellate review."[49]

Liddy thereupon moved to supplement the appellate record with a transcript of the hearing to correct the trial record,[50] which motion was granted.[51] Then Liddy moved to "strike" the "purported" supplemental corrected trial record filed by the trial court, alleging that this transcript contains errors "deliberately made" by the trial judge to "prevent a successful appeal" by Libby.[52] After a response by the State,[53] to which Liddy filed a reply,[54] the appeals court denied the motion.[55]

Liddy then received permission to file three additional, but unspecified, assignments of error.[56]  As contained in a subsequent filing,[57] the added assignments of error are as follows:

---

[49] *Id*., at 99.

[50] *Id.*, at 102-03.

[51] *Id*., at 104-05.

[52] *Id.*, at 106-07.

[53] *Id*., at 108-13.

[54] *Id*., at 114-25.

[55] *Id*., at 126-27.

[56] *Id*., at 128-29.

[57] *Id*., at 130-44.

1.      The trial court denied Mr. Libby's right to self-representation, where the court ordered that he be removed from the court in violation of the 6th and 14th Amendment.  *Faretta v. California*, 422 U.S. 806, 819 (1975).[58]

2.      The trial court committed a judicial misconduct to the prejudice of the appellant where the judge exhibited vindictiveness, partiality with complete disregard for the truth and appellant's substantive rights in violation of the due process clause and the code of judicial misconduct.[59]

3.      Appellant was denied a fair trial by the State's failure to adhere to the appellate court's mandate to correct the record with the participation of appellant's counsel.[60]

The State responded,[61] observing first that the corrections to the record took place in compliance with applicable state law and the appeals court's remand.[62]  It further argued that Liddy's absence from the hearing was caused by his own conduct and was consistent with authority permitting a court to remove a disruptive party.[63]  Moreover, it maintained that the judge's conduct, when viewed in the context of Liddy's disruptive behavior, did not demonstrate bias or partiality.[64]

---

[58] *Id.*, at 131.

[59] *Id.*, at 133.

[60] *Id.*, at 139.

[61] *Id.*, at 160-74.

[62] *Id.*, at 164-66.

[63] *Id.*, at 166-67.

[64] *Id.*, at 167-71.

The state appeals court then overruled all of Liddy's assignments of error.[65]  The appeals court initially took note that evidence was presented to the trial court that Liddy was "involved in every step" of the drug manufacturing process as "part of an organized criminal conspiracy," and so was not a "mere user" as he had argued.[66]  It further noted that Liddy, with an extensive prior criminal record including theft, escape, vandalism, and domestic abuse, is currently a drug abuser who "has refused to acknowledge his problem or accept treatment."[67]

The court then addressed the issues presented in the appeal.  First, it extensively recounted the procedural history of its remand and the relevant Ohio law concerning the production of a trial transcript, particularly the requirement that any defect in the transcript must be shown to be prejudicial to the defendant before a reversal of the conviction will be ordered.[68]  It then concluded that the trial court "meticulously followed our remand" in conducting the hearing and, after agreeing to the stipulated corrections, submitting the revised transcript for appeal.[69]

---

[65] *Id.*, at 175-89.

[66] *Id.*, at 176.

[67] *Id.*

[68] *Id.*, at 178-83.

[69] *Id.*, at 183.

Moreover, the court ruled, because Liddy requested that the original transcript be corrected, he is now "actively responsible for a ruling he now claims to be in error."[70]  The court found that the doctrine of invited error precludes Liddy from "tak[ing] advantage of an error which he himself invited or induced."[71]

In addition, the appeals court found that Liddy's "due process rights were not violated by the procedures followed by the trial court in following our remand."[72]  Specifically, the court concluded that the explicit authorization by Ohio Criminal Rule 22 of recording devices to produce a transcript demonstrates that the trial court's use of such a device was not improper in this case.[73]

As to Liddy's claimed *Faretta* violation in his removal from the transcript hearing, the appeals court initially found from the record that Liddy "constantly interrupted the judge, refused to answer his questions, refused to explain or support his objections and in general was argumentative during the hearing."[74]  In addition, the court found that this behavior persisted despite repeated warnings by the trial judge to cease.[75]  On that record, the appellate

---

[70] *Id*., at 184.

[71] *Id*.

[72] *Id*., at 185.

[73] *Id.*

[74] *Id*., at 186.

[75] *Id*.

court determined, the trial court acted within its discretion in having Liddy removed from the courtroom.[76]

Regarding the final claims alleging bias by the trial judge and the denial of a fair trial, the appeals court found no basis in the record to establish bias by the trial judge[77] nor to substantiate a claim that a fair trial was not conducted.[78]

Accordingly, all assignments of error were overruled as without merit and Liddy's conviction and sentence were affirmed.[79]  Liddy's subsequent motion for reconsideration[80] was likewise denied.[81]

## E.  Supreme Court of Ohio

Following the denial of his motion to reconsider in the appeals court, Liddy, *pro se*, filed a notice of appeal in the Supreme Court of Ohio.[82] Contemporaneously, he also filed a memorandum in support of jurisdiction,[83] raising two propositions of law:

---

[76] *Id.*, at 187.

[77] *Id.*, at 188.

[78] *Id.*, at 188-89.

[79] *Id.*

[80] *Id.*, at 190-207.

[81] *Id.*, at 211.

[82] *Id.*, at 212-14.

[83] *Id.*, at 215-33.

1.      Defendant has the right to a complete and verbatim transcript of the jury criminal proceeding as a means of presenting a meaningful appeal.[84]

2.      Defendant-appellant's constitutional right to due process was violated where the trial court failed to preserve the record of his criminal proceeding in violation of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Rule 22 of the Ohio Rules of Criminal Procedure and Court Reporter Act of 1970.[85]

After the State filed a response,[86] the Ohio Supreme Court denied Liddy leave to appeal, dismissing the appeal as not involving any substantial constitutional question.[87]  The record does not reflect that, following this dismissal, Liddy then filed a petition for a writ of certiorari with the Supreme Court.

## F.      Federal habeas corpus petition

Approximately six months after his motion for leave to appeal was denied by the Ohio Supreme Court,[88] Liddy filed the present petition for a writ of habeas corpus in this Court[89] asserting the following four grounds for relief:

---

[84] *Id.*, at 218.

[85] *Id.*, at 220.

[86] *Id.*, at 251-62.

[87] *Id.*, at 263.

[88] Liddy's motion for leave to appeal was denied by the Ohio Supreme Court on February 25, 2008 (ECF # 8, Attachment 2 at 263), and the docket sheet of this Court shows that his current petition for habeas relief was filed on  September 3, 2008.

[89] ECF # 1.

-13-

<u>Ground One</u>:  Appellant's (sic) constitutional rights was (sic) violated when the trial court failed to preserve the record for appellate review.

*Supporting Facts*:  Trial judge did not preserve a complete trial record of jury selection transcript, jury instructions, closing arguments and the taking of witness testimony.  There were more than 425 omissions from the record of proceedings.[90]

<u>Ground Two</u>:  The trial judge failed to take curative steps to preserve the trial record.

*Supporting Facts*:  The trial judge knew that the audio tape recorder used to record the jury proceedings was defective prior to previous complaint filed in the court of appeals as at the time of this defendant's trial (sic).  This judge disregarded the issue and proceeded to trial without ensuring that the recording equipment worked properly.[91]

<u>Ground Three</u>:  The trial court denied petitioner right to self-representation.

*Supporting Facts:*  The trial court ordered that the petitioner be removed from the courtroom where petitioner was acting as his own counsel in an attempt to re-create the jury trial record.[92]

<u>Ground Four</u>:  The trial court exhibited partiality and vindictiveness in three instances.

*Supporting Facts*:  This (sic) charges were dismissed for lack of probable cause by the judge at a preliminary arraignment, a secret indictment was obtained.  In the same county, the trial judge had dismissed the indictment based on prosecutorial misconduct-tampering with the evidence (see additional issues in memo. in support of writ).[93]

---

[90] *Id*. at 5.

[91] *Id*.

[92] *Id*. at 6.

[93] *Id*.  No memorandum in support of the writ appears to have been filed here, so no additional issues related to this claim have been stated.

-14-

# Analysis

## A.    Preliminary observations

I note here that Liddy's petition is not challenged by the State as untimely filed and, in fact, appears to be within the one-year limitations period prescribed by law.  Further, despite Liddy's attempt to support aspects of ground four – alleged vindictiveness of the trial court – with the example of the court's dismissal of a previous indictment that was not the basis for the conviction under which Liddy is now incarcerated, it also appears that the present petition otherwise generally satisfies the "in custody" requirement of the statute.[94]

## B.    Standard of review – fair presentment/proper presentment

Before a federal habeas court may grant the writ, a petitioner must exhaust his state court remedies by fairly and properly presenting all his constitutional claims through one full round of the state's established review procedure.[95]  Simply put, the duty of fair presentment requires the habeas petitioner, prior to coming to federal court, "to present the state courts with the same claim he urges upon the federal courts."[96]  The related duty of proper

---

[94] *See*, 28 U.S.C. § 2244(d)(1).

[95] 28 U.S.C. § 2254(d); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-48 (1999); *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004).  Technically, the exhaustion requirement has two components.  First, the aspect that the claim be presented similarly to both the state and federal courts is deemed a duty of "fair presentment," while the element that mandates that the state be afforded one full round of its review procedure to address the fairly presented claim is denominated as the duty of "proper presentment."  These twin duties are, like exhaustion itself, rooted in the principle of federal-state comity that state courts must first be given "one full opportunity to resolve any constitutional issues" before federal courts assume jurisdiction.  *Boerckel*, 526 U.S. at 845.

[96] *Picard v. Connor*, 404 U.S. 270, 276 (1971) (citation omitted).

presentment requires, where a state has a discretionary component to the direct appeal process, that (1) the petitioner must appeal from the trial court to the court of appeals and (2) then at least seek review of the appellate decision by the state supreme court.[97]

The Sixth Circuit has held that fair presentation of a federal constitutional issue to the state court requires that the petitioner frame his federal constitutional argument before the state courts in one of the following four ways:

> "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law."[98]

Moreover, the Sixth Circuit has made clear that mere "'general allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present claims" that specific constitutional rights were violated.'"[99]  In addition, a claim is not fairly presented to the state courts if those courts must look outside of the filings presented to them to locate a federal basis for or link to the claim.[100]  Nor is it enough for fair presentment that the facts necessary to support a federal claim were asserted or that a similar state law claim was made.[101]

---

[97] *Boerckel*, 526 U.S. at 848.

[98] *Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005) (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (citation omitted)).

[99] *Blackmon v. Booker*, 394 F.3d 399, 400 (citing *McMeans*, 228 F.3d at 681 (quoting *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (6th Cir. 1984))).

[100] *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

[101] *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

If a claim was not fairly or properly presented in state court, the federal court must ascertain if state remedies are still available by which state courts may consider the claim. If remedies remain, the claim is not exhausted and state courts must be permitted to review the claim before it can be addressed by the federal court.[102]  If no further state remedies exist, there is no lack of exhaustion, but the claim is deemed procedurally defaulted or waived.[103]

**C.     Standard of review – waiver/procedural default**

As noted, where a petitioner:  (1) has not fairly presented his federal claims to the state court, (2) nor properly presented them through one full round of the state's established review process, but (3) is now precluded from returning to state courts with the claim to properly present it, the barrier to entertaining the issue in federal court is not the jurisdictional one of exhaustion, since no further state remedies remain, but rather procedural default or waiver.[104]

The Sixth Circuit has long-employed a four-part test to determine if a claim is procedurally defaulted or waived:

(1)     Does a state procedural rule exist that applies to the petitioner's claim?

(2)     Did the petitioner fail to comply with that rule?

(3)     Did the state court rely on that failure as the basis for its refusal to consider the merits of the petitioner's claim?

---

[102] *McMeans*, 228 F.3d at 681.

[103] *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004).

[104] *Fauntenberry v. Mitchell*, 515 F.3d 614, 628 (6th Cir. 2008) (citation omitted); *Deitz*, 391 F.3d at 804; *Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002) (citations omitted).

-17-

(4)      Is the state rule an adequate and independent state law basis for barring the federal court from considering the claim?[105]

Moreover, in addition to these elements, the state procedural rule must be shown to be firmly established and regularly followed.[106]

Once procedural default or waiver is determined by these factors, it may be overcome by the petitioner upon showing both cause for the default and actual prejudice from the failure of the federal court to address the alleged federal constitutional violation.[107]  The default or waiver may also be overcome by a showing of actual innocence.[108]

To establish "cause," a petitioner must generally show that some objective factor, something external to the petitioner himself that cannot be fairly attributed to him, precluded his compliance with the state procedural rule.[109]  Demonstrating "prejudice" from a procedural default or waiver requires that the petitioner show that the alleged error worked to his actual and substantial disadvantage, infecting the entire trial with error of a constitutional dimension.[110]  In that regard, there can be no prejudice where the petitioner cannot show a reasonable probability of a different outcome at trial.[111]

---

[105] *Morales v. Mitchell*, 507 F.3d 916, 937 (6th Cir. 2007) (citation omitted).

[106] *Smith v. State of Ohio Dept. of Rehab. & Corrs.*, 463 F.3d 426, 431 (6th Cir. 2006) (citations omitted).

[107] *Deitz*, 391 F.3d at 808.

[108] *Id.*

[109] *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

[110] *United States v. Frady*, 456 U.S. 152, 170 (1982).

[111] *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

In addition, a petitioner may overcome a showing of procedural default or waiver if he can show through new, reliable evidence not available at trial "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."[112] The Supreme Court has emphasized, however, that actual innocence means "factual innocence, not mere legal insufficiency."[113]

Finally, even when procedural default is established, the Supreme Court has held that a federal court is not required to address it before deciding against the petitioner on the merits.[114] The Sixth Circuit, in applying this rule, has concluded that it is appropriate for the federal habeas court to not address a claimed procedural default where the issue is complex and unnecessary to resolving the claim against the petitioner.[115]

**D.    Liddy's claims in Grounds Two, Three, and Four were not properly presented to the Ohio courts and, pursuant to Ohio's *res judicata* standard, he cannot now return to Ohio courts to properly present them.  Thus, these claims should here be dismissed as procedurally defaulted.**

I note initially that the Sixth Circuit has recognized that where a petitioner fails to raise a claim in the Ohio courts that appears on the face of the record, that failure will bar

---

[112] *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

[113] *Bousley v. United States*, 523 U.S. 614, 623 (1998).

[114] *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

[115] *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003).

-19-

further review of the claim by Ohio courts under the doctrine of *res judicata* and preclude federal habeas review on the basis that the claim is procedurally defaulted.[116]

Here, three of Liddy's federal habeas grounds were initially presented to the Ohio appeals court and denied.  Liddy did not then raise the grounds in any form to the Supreme Court of Ohio.  The State here has largely contended that Grounds Two, Three, and Four of Liddy's present petition were framed on direct appeal solely as state law arguments and, thus, not fairly presented as federal constitutional claims.  This is problematic.  More basically, however, Liddy failed to pursue these grounds through one full round of the state's established review procedure, contrary to the requirements set forth in *O'Sullivan v. Boerckel*.[117]  Liddy, therefore, failed to exhaust state procedures as to these grounds.  Because no further state procedures remain open to him, he has procedurally defaulted these grounds.[118]

Additionally, Ohio's doctrine of *res judicata* applies when, as here, a petitioner could have raised an argument before an Ohio court, but failed to do so.  Liddy's failure  to seek review in the Supreme Court of Ohio of the appellate court's denial of the claims contained here in Grounds Two, Three, and Four – whether as state law claims or as violations of federal constitutional rights – meets the first three elements of the test for procedural default

---

[116] *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001) (citing *Smith v. Anderson*, 104 F. Supp. 2d 773, 794 (S.D. Ohio 2000)).

[117] *Boerckel*, 526 U.S. 488.

[118] *Id.*

set out above.[119]  Also, the doctrine of *res judicata* as employed in Ohio satisfies the final element of the test, inasmuch as *res judicata* is an adequate and independent state law ground upon which the state can foreclose review of a federal constitutional claim.[120]  Thus, I recommend finding that Grounds Two, Three, and Four of the present petition are procedurally defaulted.

Liddy has, as noted, essentially accepted that his failure to raise the claims in Grounds Two, Three, and Four to the Ohio Supreme Court has resulted in them being here procedurally defaulted.  In his traverse, although he claims to be an innocent man, he does not advance new, reliable evidence not available at trial for his innocence.  Rather, his innocence argument, also stated as a miscarriage of justice argument, centers on alleged procedural defects in various proceedings.  In this sense, Liddy is seeking to assert, contrary to the Supreme Court's holding in *Bousley v. United States*,[121] not a claim of factual innocence, but mere legal insufficiency.  I thus recommend finding that Liddy has not overcome the procedural default here by establishing actual innocence on the basis of new, reliable evidence not available at trial that would make it more likely than not that no reasonable juror would have convicted him.[122]

---

[119] *Jacobs*, 265 F.3d at 417 (citations omitted); *see also*, *Kolvek v. Eberlin*, No. 5:05-CV-2598, 2007 WL 6197483, at *7 (N.D. Ohio May 24, 2007).

[120] *Jacobs*, 265 F.3d at 417; *Mills v. Hudson*, No. 3:08-CV-1974, 2009 WL 2232858, at *7 (N.D. Ohio July 22, 2009).

[121] *Bousley*, 523 U.S. at 623.

[122] In fact, as the Supreme Court explicitly noted in *Schlup*, to establish a credible basis for actual innocence, a petitioner must support his allegation with "new reliable

**E.**     **Ground One should be denied on review with modified AEDPA deference on the basis that Liddy was not denied due process in his appeal as a result of purported deficiencies in the trial transcript.**

Preliminarily, I observe that there is a dispute over how the claim in Ground One – that Liddy's constitutional right was violated when the trial court failed to preserve the record for appeal – was presented in state court; *i.e.*, as exclusively a state law claim, as the State argues, or as a claim containing a federal constitutional component, as Liddy maintains. Resolving that dispute in the State's favor would be a necessary predicate to then addressing the State's procedural default argument, which rests on an assertion that this claim was not fairly presented to the Ohio courts. Because the fair presentment/procedural default issue on this claim is complex and resolving it is unnecessary to recommend finding against Liddy on this question, I propose to bypass fair presentment/procedural default on this claim and proceed to the merits.[123]

Because it is arguable that the state court's decision addressed the claim before it as a federal constitutional issue, the matter of what standard of review should be applied by this Court must be considered. If the state court had a federal claim before it, but adjudicated it without utilizing federal constitutional analysis, the federal habeas court should accord the state decision a modified version of AEDPA deference.[124]  This modified deference means

---

evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324; *see also*, *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 427 (6th Cir. 2003).  Liddy does not advance such new evidence here.

[123] *Hudson*, 351 F.3d at 215-16.

[124] *Bey v. Bagley*, 500 F.3d 514, 520 (6th Cir. 2007) (citation omitted).

-22-

that the federal habeas court must conduct a careful review of the record and all applicable law but only reverse the state court's conclusion if it is contrary to clearly established federal law.[125]  Where, however,  the state court's analysis bears a similarity to that used by clearly established federal law applicable to the claim, this modified or limited deference may consider whether the state court decision constituted an unreasonable application of clearly established federal law.[126]

As in the case of standard AEDPA review, determining that a state court decision was an unreasonable application of clearly established federal law means that the federal court finds that the state court properly identified the correct governing principle from the decisions of the United States Supreme Court but then unreasonably applied that ruling to the facts in the petitioner's case.[127]  The proper inquiry is whether the state decision was "objectively unreasonable" and not merely erroneous or incorrect.[128]  In addition, while clearly established federal law consists of holdings of the Supreme Court,[129] those holdings also consist of the legal standards and principles flowing from specific precedent.[130] Specifically, in looking to clearly established federal law, a federal habeas court in this

---

[125] *Id.*

[126] *Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005) (citing *Howard v. Bouchard*, 405 F.3d 459 (6th Cir. 2005)).

[127] *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000).

[128] *Id.* at 409-11.

[129] *Id.* at 412.

[130] *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).

Circuit is bound by prior decisions of the Sixth Circuit that conclude that federal law on an issue has been clearly established.[131]  If, however, there is no clearly established federal law on the matter that supports the petitioner's claim, that claim must fail.[132]

Here, I note first that the clearly established federal law concerning due process rights to a trial transcript for appeal when there are alleged omissions in the transcript was recently re-stated by the Sixth Circuit as follows:

> This Court has held that federal habeas relief based on a missing transcript will only be granted where the petitioner can show prejudice. In [this Court's prior decision of] *Bransford*, as in this case, this Court considered whether the unavailability of transcripts of jury instructions was a per se violation of due process.  The trial court in that case had determined that the transcript of the instructions was irretrievable.  The petitioner made no specific allegation of error, however.  This Court held that there was no per se violation of prejudice, and stated that a petitioner "must show prejudice resulting from the missing transcripts."  The Court added, "[a]lthough this court recognizes the inherent difficulty in demonstrating prejudice where the transcripts are missing, petitioner must present something more than gross speculation that the transcripts were requisite to a fair appeal.[133]

Specifically, the *Bransford* Court rejected the idea that habeas relief could be granted merely upon proof that a transcript contained missing pages or portions of testimony:

> [A]n inference that prejudice resulted from the missing [pages of] transcripts would simply be too farfetched.  Any time a page is missing from a transcript we cannot assume that reversible error may have been reflected on

---

[131] *Smith v. Stegall*, 385 F.3d 993, 998 (6th Cir. 2004).

[132] *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005).

[133] *Jackson v. Renico*, 179 F. App'x 249, 252 (6th Cir.2006) (citing and quoting *Bransford v. Brown*, 806 F.2d 83, 86 (6th Cir. 1986)).

that page, but rather some modicum of evidence must support that conclusion.[134]

Moreover, as relates directly to Liddy's case, *Bransford* explicitly held, in the context where transcript portions were missing, that "the Fourteenth Amendment does not require a word-by-word transcript where the production of such is impossible and the failure to produce such is not invidiously motivated."[135]  Rather, *Bransford* stated the rule that "in order to demonstrate denial of a fair appeal, [P]etitioner must show prejudice resulting from the missing transcripts."[136]

Here, although its analysis was done solely as a matter of Ohio law, the state appeals court likewise initially rejected the notion advanced by Liddy that any failure of the transcribing system in the trial court entitled him, *per se*, to a reversal of his conviction and concluded that, to obtain relief, an appellant in Ohio must show he was prejudiced by any gaps or omissions in the transcript.[137]

In fact, the appeals court here relied on an Ohio appellate decision that was substantially similar to the federal law formulated by the Sixth Circuit.  Specifically, the court in Liddy's appeal quoted and relied on the Ohio appellate decision of *State v. Peck*[138]

---

[134] *Bransford*, 806 F.2d at 86.

[135] *Id*. at 85.

[136] *Id*.

[137] ECF # 8, Attachment 2 at 182-83.

[138] *State v. Peck*, No. 1361, 1988 WL 135675 (Ohio Ct. App. Dec. 15, 1988).

for the rule in Ohio that "'[a]bsent a showing that the failure to preserve portions of trial testimony prejudiced his appeal appellant is not entitled to reversal.'"[139]

The appeals court then applied the Ohio rule to Liddy's case and found first that, because any problems with the transcript in its original form had resulted in a remand and a revised transcript, Liddy could not have been prejudiced by the transcript in its pre-remand condition, regardless of its defects.[140]  Further, it then found, based on the transcript produced on remand, that Liddy had failed to show how the revised transcript prejudiced him.  In a detailed explanation of this conclusion the appeals court stated:

> [Liddy] has not shown that he was prejudiced by the existence of any of the [remaining] inaudibles in the transcript.  He did not argue that any specific gap prevented him from asserting error.  He did not assert any assignment of error which could not be considered due to gaps in the transcript.  He did not object to any question posed to a prospective juror or to the seating or excuse of a prospective juror.  On appeal, he does not argue that if any inaudible or other gap were filled in, it would evidence error.  Nor does [Liddy] object to any particular supplement [in the revised transcript].  In essence, he argues that the mere existence of gaps in the trial transcript per se resulted in a violation of his due process rights[141] and an abuse of discretion.  Based on the authority set forth, supra, we do not agree.[142]

---

[139] ECF # 8, Attachment 2 at 182-83 (quoting *Peck*, 1988 WL 135675, at *2).

[140] *Id.*, at 183.

[141] I note that the state court's summary of Liddy's argument on appeal gives credence to Liddy's argument here that his claim on appeal was framed as a federal constitutional question.  The fact that the court had a federal constitutional claim before it, but nevertheless resolved it purely by reference to state law supports the recommendation that the decision be analyzed pursuant to the modified deference standard.

[142] ECF # 8, Attachment 2 at 184.

Based on this discussion by the state court in its decision, the state court's basis for decision here was readily discernable, and, though the decision was based solely on Ohio law, that law was closely in line with applicable federal law.  Thus, as noted, the state decision should be analyzed here under the standard of modified AEDPA deference.  Under that standard, this Court must carefully review the record and the law, only reversing the state court if its decision was an unreasonable application of clearly established federal law.

Here, the state court's decision denying Ground One of this petition was not an unreasonable application of clearly established federal law.  Liddy, as the appeals court opinion recounts, clearly was in error to assert – as he does here – that he is entitled to reversal *per se* simply upon showing that his trial transcript was not indisputably letter perfect, regardless of whether any gaps or omissions were actually shown to be prejudicial to an appeal. Moreover, also as the state appellate opinion carefully points out, Liddy has not shown – either to the Ohio appeals court or here – what specific defect in the transcript produced after remand caused any prejudice to his appeal.

Consequently, I recommend that Ground One be denied on the merits.

## Conclusion

For the foregoing reasons, I recommend that the petition of Richard Liddy for a writ of habeas corpus be denied in part and dismissed in part.


Dated:   September 3, 2009                    s/ William H. Baughman, Jr.
                                              United States Magistrate Judge

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[143]

---

[143] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).